CAPITOL SAVINGS & LOAN CO. *v.* SECRETARY OF STATE.

1. BUILDING AND LOAN ASSOCIATIONS—RENEWAL OF CORPORATE CHAR-
   TER—FRANCHISE FEE—REMEDIAL STATUTES.

> Remedial statute, designed to afford a building and loan associa-
> tion opportunity to renew its legal existence and reorganize as
> of the date of the expiration of its former term, and passed
> after it was discovered that a previous statute did not conform
> to the Constitution, and which remedial statute was silent
> upon matter of renewal franchise tax *held*, not intended to
> require payment of such a tax, where association attempted
> to renew its corporate existence prior to passage of statute im-
> posing such tax, in accordance with unconstitutional statute
> then existing and, after passage of remedial statute and in
> accordance therewith, sought to renew its existence as of time
> before tax was required (Comp. Laws 1929, §§ 10138, 12147;
> Act No. 25, Pub. Acts 1937).

2. SAME—REMEDIAL STATUTES.

> In enacting a statute to afford a remedy to building and loan
> associations which had complied with previously enacted un-
> constitutional statute, it is assumed legislature intended to re-
> pair damage by placing associations in a position as near as
> possible to that they would have occupied if no error of the
> legislature had been made (Act No. 25, Pub. Acts 1937).

3. COSTS—PUBLIC QUESTION—STATUTES.

> In suit involving determination of application of statutes to mat-
> ter of requiring payment of a franchise fee by building and
> loan association on renewal of its franchise after passage of
> remedial statute, no costs are allowed, a public question being
> involved (Comp. Laws 1929, §§ 10138, 12147; Act No. 25,
> Pub. Acts 1937).

Appeal from Ingham; Carr (Leland W.), J.  Sub-
mitted June 9, 1938.  (Docket No. 54, Calendar
No. 40,098.)  Decided October 3, 1938.

Bill by Capitol Savings & Loan Company, a Michigan building and loan association, against Leon D. Case, Secretary of State, and others to restrain defendants from taking steps to suspend plaintiff's right to do business and from collecting a franchise fee because of renewal of plaintiff's corporate existence. Cross-bill of complaint by Raymond W. Starr, Attorney General, *ex rel.* Leon D. Case, Secretary of State, John D. Lynch, director building and loan division, department of State, Michigan Corporation and Securities Commission, and Carl A. Olson, its commissioner, against plaintiff to enjoin plaintiff from exercising corporate powers unless franchise fee is paid. Decree for defendants. Plaintiff appeals. Reversed.

*Cummins & Cummins (Carl D. Mosier* and *T. Gerald McShane,* of counsel), for plaintiff.

*Raymond W. Starr,* Attorney General, and *Joseph Zwerdling,* Assistant Attorney General, for defendants.

BUTZEL, J. The corporate charter of plaintiff, a building and loan association duly organized under Act No. 50, Pub. Acts 1887 (3 Comp. Laws 1929, § 12134 *et seq.* [Stat. Ann. § 23.541 *et seq.*:]), expired on March 4, 1920. Prior to that time, at the 1920 annual meeting, it went through the form of renewing its corporate existence, in strict conformance with section 14 of Act No. 50, Pub. Acts 1887, as amended by Act No. 273, Pub. Acts 1915 (3 Comp. Laws 1929, § 12147), which provided that a building and loan association might renew its corporate term by a vote of two-thirds of the capital shares represented at an annual meeting.

Plaintiff and defendant both agree that under the law then in force, a building and loan association was not required to pay a franchise fee on renewal of its corporate term. By the amendment to Act No. 85, Pub. Acts 1921, as set forth in Act No. 175, Pub. Acts 1929 (2 Comp. Laws 1929, § 10138 [Stat. Ann. § 21.203]), corporations renewing their corporate existence were required to pay a new franchise fee.

In 1936, it was discovered that Act No. 50, § 14, Pub. Acts 1887, as amended, permitting renewal upon a vote of only two-thirds of the shares represented at the meeting, violated article 12, § 3, of the Constitution of this State, which provides that such extension of the corporate charter may be effected by a vote of not less than two-thirds of the entire capital stock of the corporation. Because of the failure of the legislature to conform with the Constitution, plaintiff's attempted renewal in 1920 was ineffectual, although it has continued to do business since that time.

Act No. 25, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 12147 *et seq.*, Stat. Ann. 1938 Cum. Supp. § 23.555 *et seq.*), was enacted to rectify the error in the statute and to enable building and loan companies in the position of plaintiff to extricate themselves from their difficulties. Section 14 provides that an association, whose term may thereafter expire by limitation, may renew by a vote of two-thirds of the outstanding capital stock. Section 14a provides that any association whose term has expired, or may thereafter expire, but which has continued its active business beyond such term, shall be deemed a *de facto* association, and any such association may, within three years from the effective date of the act, or within three years from the date of

the expiration of the term of the association, which ever is later, renew its corporate existence with the consent of the holders of four-fifths of its outstanding capital stock. Section 14b provides:

"Upon the filing of the certificates required by section fourteen and section fourteen-a in the office of the secretary of State, such association's legal existence shall be considered to have been extended or renewed and reorganized as the case may be, as of the date of the expiration of its former term and an association which has thus been extended or renewed and reorganized shall be the same association, and hold and own all the rights, franchises and property held and owned by the association before extension or renewal and reorganization, and be subject to all its liabilities, and have the same stockholders, and members and the same directors and officers as said association had immediately before its extension or renewal and reorganization."

By appropriate action, plaintiff proceeded to comply with the new statute and filed the required certificates with the secretary of State, together with fees and taxes in the amount of $10. The certificates and fees were accepted and duly approved. Subsequently, defendant notified plaintiff that it was subject to the tax imposed on the renewal of corporate franchises by Act No. 85, Pub. Acts 1921, as amended by Act No. 175, Pub. Acts 1929, and demanded payment of an additional fee of $4,996, in default of which plaintiff's charter would be revoked. Plaintiff thereupon filed this bill to enjoin defendant from revoking its charter and paid the fee of $4,996 into court, to abide the outcome of the suit. The lower court found that plaintiff was subject to the tax and entered a decree in favor of defendant. Plaintiff appeals.

Plaintiff claims that the legislature intended that the privilege to renew its corporate existence might be exercised subject only to such fees as were required at the time of its former attempted renewal; that no tax was required in 1920; and that, therefore, none was required today. Defendant contends, on the other hand, that plaintiff is actually renewing its existence today and that Act No. 25, Pub. Acts 1937, discloses no intent to exempt plaintiff from any tax required today.

It is true that the statute does not expressly grant plaintiff an exemption from the payment of fees and taxes imposed after the expiration of its franchise. It, however, is absolutely silent on the subject, and provides that a corporation upon conforming with section 14b *supra*, be placed in the status as if it had properly and timely renewed its franchise at or prior to its expiration. The difficulties in which plaintiff became involved are due solely to a mistake of the legislature and were not caused through any fault or neglect of plaintiff. It is only fair to assume that the legislature, in enacting a remedial statute, intended to do its best to repair the damage, by placing plaintiff in a position as near as possible to that it would have occupied if no error had been made. Section 14b of the act provides that the "association's legal existence shall be considered to have been * * * renewed and reorganized * * * as of the date of the expiration of its former term."

It would be contrary to the general tenor of this provision to hold that the legislature intended to make plaintiff subject to a renewal franchise tax which was not imposed by legislation adopted until after the date of the expiration of its former term. There is no reason why the legislature would wish to penalize plaintiff in this respect, while it is other-

wise relieving it from the damage caused by the mistake the legislature itself had formerly made.

Defendant points out that section 14b is indiscriminately applicable to any building and loan association which may renew either under section 14 or section 14a and whose charter may hereafter expire, as well as corporations in the position of plaintiff whose charters have already expired and who renew under section 14a. From this, it is urged that section 14b could not have been intended to apply with any special force to plaintiff's peculiar situation. However, section 14b expressed the general remedial purpose of the statute to relieve any building and loan association of the difficulties which have arisen or might otherwise arise, upon expiration of its corporate term. The fact that some of the associations to which it applies may be more in need of and more deserving of assistance than others does not alter this purpose. The extent of the remedy can be made to fit the situation. Should a corporation of its own neglect fail to renew its charter upon the expiration of its former term, then it might well be argued that section 14b was not intended to relieve it from payment of a tax imposed in the interim. However, plaintiff failed to renew its existence before the enactment of the taxing statute, only because the legislature made a mistake and we are convinced that one of the purposes of the legislature in enacting Act No. 25, Pub. Acts 1937, was to relieve corporations in plaintiff's position of the difficulties and burdens incurred as a result of that mistake. We therefore conclude that plaintiff is not bound to pay a franchise fee in order to renew its corporate existence, since such renewal is considered to have been made as of a time when no franchise fee was required. In view of this decision, the other questions raised by plaintiff need not be discussed.

Our decision is limited solely to the factual situation presented and we are not considering the case of a corporation whose franchise expired or was about to expire at a time when the payment of a tax on a renewal was in force.

The decree of the lower court is reversed, and one may be entered for plaintiff, but without costs, a public question being involved.

WIEST, C. J., and BUSHNELL, SHARPE, CHANDLER, and MCALLISTER, JJ., concurred with BUTZEL, J.

POTTER, J. (*concurring in result*). I concur in the result reached by Mr. Justice BUTZEL, but think the statute, Act No. 25, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 12147 *et seq.,* Stat. Ann. 1938 Cum. Supp. § 23.555 *et seq.*), expressly grants to plaintiff an exemption from the payment of the fees and taxes sought to be imposed. Section 14b of the act provides:

"An association which has thus been extended or renewed and reorganized shall be the same association, and hold and own all the rights, franchises and property held and owned by the association before extension or renewal and reorganization, and be subject to all its liabilities, and have the same stockholders, and members and the same directors and officers as said association had immediately before its extension or renewal and reorganization."

Plaintiff is to have the *same property* and liabilities after extension or renewal and reorganization as it had before. It is, therefore, plain that the association is not required to part with any of such property to pay any fees and taxes but is to have the same property after as before the extension or renewal and reorganization.

NORTH, J., did not sit.